## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN W. NORFOLK and BRANDY M. NORFOLK, Plaintiffs, | : : : No. 3:17-CV-204 |
| Vs. | : : |
| THE GEO GROUP, INC., d/b/a MOSHANNON VALLEY CORRECTIONAL CENTER, Defendant. | : : : : JURY TRIAL DEMANDED |

### SECOND AMENDED COMPLAINT

AND NOW, COME Plaintiffs Stephen W. Norfolk and Brandy M. Norfolk ("Plaintiffs") by and through their attorneys, Amy H. Marshall, Esquire and Babst, Calland, Clements and Zomnir, P.C. and files this Second Amended Complaint against The Geo Group, Inc. d/b/a Moshannon Valley Correctional Center ("Defendant") in support thereof avers as follows:

### JURISDICTION

1. This Court has jurisdiction over this action pursuant to the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 42 U.S.C. § 2000e-5. This Court has pendant jurisdiction over the Plaintiffs' Pennsylvania Human Relations Act (PHRA) claim, 43 Pa.C.S. §951 et seq.

2. This Court can exercise personal jurisdiction over Defendant because, among other things, Defendant continuously and systematically conducts business in the Commonwealth of Pennsylvania. Defendant employed Plaintiffs in the Western District of Pennsylvania and Defendant terminated Plaintiffs in the Western District of Pennsylvania.

**VENUE**

3.  Venue is proper in this judicial district because the unlawful employment practice and racial discrimination and retaliation claim alleged in the Complaint was committed within the Western District of Pennsylvania; Defendant regularly conducts business in the Western District of Pennsylvania; Plaintiffs would be employed in the Western District of Pennsylvania, but for the unlawful employment practices and Defendant employs numerous individuals in the Western District of Pennsylvania. Accordingly, venue lies in the United States District Court for the Western District of Pennsylvania.

**PARTIES**

4.  Plaintiffs are adult individuals, who at all times relevant to the allegation in this Complaint resided in Kylertown, Pennsylvania, Clearfield County. Plaintiffs aver that they are eligible employees pursuant to Title VII and the PHRA.

5.  Defendant is a private prison institution housing inmates in Clearfield County, Pennsylvania. The Defendant's main office is located at 555 Cornell Drive, Philipsburg, Clearfield County, Pennsylvania.

6.  At all relevant times hereto, Defendant was Plaintiffs' employer and was an employer within the meaning of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

**ADMINISTRATIVE PROCEEDINGS**

7.  Plaintiffs have satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5 and specifically:

    a.  Plaintiff, Stephen W. Norfolk, timely filed written charges alleging racial discrimination and retaliation with the Pennsylvania Human Relations

{B3578703.5}

Commission (PHRC) and the United States Equal Employment Opportunity Commission (EEOC) on February 10, 2016, and again on May 19, 2016;

b. Plaintiff, Brandy M. Norfolk, timely filed written charges alleging discrimination and retaliation with the Pennsylvania Human Relations Commission (PHRC) and the United States Equal Employment Opportunity Commission (EEOC) on June 13, 2016.

c. Plaintiff, Stephen W. Norfolk received a Notice of Right to Sue Letter from the EEOC on August 4, 2017.

d. Plaintiff Brandy M. Norfolk received a Notice of Right to Sue Letter from the EEOC on August 9, 2017.

e. Plaintiffs filed this Complaint within ninety (90) days of receipt of the Notice of Right to Sue Letters from the EEOC and is within two (2) years of the Plaintiffs' dismissal from the PHRC.

**FACTUAL BACKGROUND – STEPHEN W. NORFOLK**

8. The Plaintiff Stephen W. Norfolk began employment as a Corrections Officer with the Defendant in February, 2006. On October 26, 2012, Stephen W. Norfolk was promoted to the rank of Lieutenant and was a Lieutenant at the time of his termination.

9. In 2014, the Defendant terminated much of the executive staff and filled positions with new individuals, including the employment of Major Robert Parrish.

10. Stephen W. Norfolk's supervisor was Major Robert Parrish who is an African American man.

11. In late 2014, Stephen W. Norfolk began enduring harassing and racially discriminating comments from Major Robert Parrish.

12. On December 18, 2014, Major Parrish began demeaning and harassing Mr. Norfolk after Mr. Norfolk reported Major Parrish's use of profanity with the staff.

13. On December 18, 2014, at approximately 1215 hours, Mr. Norfolk was sitting in classroom #4 of the Training Center, during CERT Training with the CERT Team being present, when he received a call from Parrish. Mr. Parrish was on the speaker phone as the handset was broken, addressing staff and Stephen Norfolk about issues at the facility stating "your mother f***'n staff can't keep their f***'n mouths shut." Mr. Norfolk reported the incident to Donald Emerson.

14. As a result of Stephen Norfolk reporting the December 18, 2014, incident to Donald Emerson, Associate Warden, Mr. Parrish questioned Mr. Norfolk and asked him "what's wrong with your white ass?" Mr. Parrish further added "I'd fire someone for something like this."

15. On May 12, 2015, Mr. Norfolk punched out of his shift early after being instructed to by Captains Braniff and Jones.

16. On May 19, 2015, Parrish called Mr. Norfolk to his office screaming at him and used profanities for punching out early.

17. On May 19, 2015, Mr. Norfolk reported the May 12, 2015, incident to Mr. Uhlig (Human Resources) regarding Major Parrish's behavior addressing his departure from work on May 12, 2015. As a result of Mr. Norfolk's report to Human Resources, Major Parrish threatened Mr. Norfolk about reporting any other activities under a direct threat of termination.

18. The racially charged discriminatory comments made by Parrish to Stephen W. Norfolk including, but not limited to:

    a. "you're gonna learn that reporting this ain't goin nowhere, and I can get a piece of white ass whenever I want" ..... "I love white ass";

    b. "you sit that white ass in your seat";

      c. "I ought'a fire your white ass".

19. Some of Major Parrish's comments were made to Stephen W. Norfolk in the presence of Mr. Norfolk's co-workers.

20. Mr. Norfolk again advised the human resources manager Ed Uhlig that he was being harassed by Major Parrish. Mr. Uhlig did not address or respond to the complaints.

21. Each time Mr. Norfolk reported an incident with Mr. Parrish to someone in charge, Mr. Parrish would scream at him, use profanities and threaten to fire "his white ass".

22. Major Parrish gave preferential treatment to Edward McDougald (race African American) also a Lieutenant. Mr. McDougald received additional time off while other white Lieutenants, including Mr. Norfolk, were required to work double shifts.

23. Mr. McDougald was also not disciplined for infractions, such as escorting inmates who were just in a fight with one another with no restraints and leaving firearms unsecured in a vehicle. Mr. McDougald' performance failures were overlooked by Major Parrish but could have resulted in severe discipline or termination if performed by a white Lieutenant.

24. On October 6, 2016, at 1530 hours, Mr. Norfolk requested flex leave from Major Parrish due to a family emergency. Parrish initially denied Mr. Norfolk's flex leave request. Mr. Norfolk went back to Parrish and asked him to reconsider and Parrish told him to wait until he was done with his work. Mr. Norfolk had to explain to Parrish that he needed the leave due to his wife's mother being hospitalized. After some time passed, Mr. Norfolk was permitted to take his flex leave for the family emergency.

25. On October 15, 2016, while working the midnight shift, Mr. Norfolk was informed by Officers K. Maines and B. Bender that Captain S. Hardy stated earlier in the week that he hoped and thought it would be funny if Mr. Norfolk got mandated on the 16th. Mr. Norfolk had missed many days due to his mother-in-law being hospitalized with complications and presumed

Major Parrish would penalize him for the time he had to take off. Mandating was a practice Major Parrish had forcing an employee to work their days off, holidays, vacation time or double shifts as a form of punishment. The staff was well aware of Major Parrish's "mandating" practice.

26. On February 5, 2016, after his midnight shift, Stephen W. Norfolk was told to report to Mr. Parrish's office. Mr. Parrish read a written formal discipline report to him that included his absence from a security meeting and not receiving "KITS" training. Mr. Norfolk tried to give an explanation for both but Mr. Parrish stated "it doesn't matter." Mr. Norfolk then went to Mr. Emerson's office to give an explanation and reminded Mr. Emerson about his reason for not getting the KITS training but Mr. Emerson screamed at Mr. Norfolk and told him to get out.

27. By the evening of February 5, 2016, Mr. Norfolk was contacted by Ed Uhlig of Human Resources and advised that Major Parrish had placed him on administrative leave without pay until further notice.

28. On February 10, 2016, Mr. Norfolk filed a complaint with EEOC.

29. In March, 2016, Mr. Norfolk was requested to report to the training center to give a statement as to what occurred on February 5, 2016.

30. Shortly before Mr. Norfolk's termination, the GEO Group sent an email to staff asking them to read, sign and return an acknowledgment form advising them how to file a claim in the event they feel they are being harassed and to acknowledge their right to do so.

31. Mr. Norfolk believes he was terminated as a result of his multiple reports to Human Resources about Major Parrish's racially charged and harassing comments.

32. Mr. Norfolk further believes he was terminated, as a result of the complaint he filed with the EEOC on February 10, 2016.

33. On April 25, 2016, Stephen W. Norfolk received a letter from Defendant terminating his employment for failure to follow policy.

34. One day after Stephen W. Norfolk was terminated, on April 26, 2016, Major Robert Parrish was also terminated from employment with Defendant.

35. In May, 2016, Donald Emerson was transferred out of the facility.

### FACTUAL BACKGROUND – BRANDY M. NORFOLK

36. Plaintiff incorporates by reference Paragraphs 1-35 as if the same were set forth in full.

37. The Plaintiff Brandy M. Norfolk began employment as a Case Manager with the Defendant in January, 2006. At the time she was terminated, she was employed as a Unit Manager.

38. Brandy M. Norfolk's Supervisor was Donald Emerson.

39. On February 8, 2016, one day after her husband, Stephen W. Norfolk was placed on administrative leave without pay, Brandy M. Norfolk's supervisor began targeting Brandy M. Norfolk's performance.

40. On June 10, 2016, Brandy M. Norfolk received a letter placing her on administrative leave without pay pending a review of her performance and adjudication of potential disciplinary action.

41. Prior to her husband being placed on administrative leave up to the time when she received a letter placing her on administrative leave, Brandy M. Norfolk had no significant disciplinary issues at her place of employment.

42. At no time during her employment was any issue brought to her attention that needed to be addressed under normal disciplinary proceedings. In fact, the first time Brandy M. Norfolk was advised of any disciplinary issues was on the date she received the letter of June 10, 2016, placing her on administrative leave.

43. On June 16, 2016, Brandy M. Norfolk was directed to report to the facility and left to stand in the main administrative building where all staff and visitors were processed and in

direct sight of staff, causing her embarrassment and humiliation amongst her peers. Mrs. Norfolk was then taken to a conference room where she was terminated in front of the executive staff.

44. Mrs. Norfolk was told she was placed on leave for her failure to report any issues in the Housing Unit she supervised. Lieutenant Robert Smerk was witness to Mrs. Norfolk reporting to upper management the issues in the housing unit.

45. On April 14, 2016, there was a large number of inmates surrounding the unit control bubble officer in C-Unit. Mrs. Norfolk became aware of the situation from Lt. Smerk. Mrs. Norfolk attempted to contact Mr. Emerson via telephone and two-way radio to advise him but got no response. Mrs. Norfolk then reported the incident to Mr. Parrish. Lt. Smerk saw Mr. Emerson in the dining hall and reported the incident to him and to Captain Gates. Therefore, three members of the chain of command were notified. In addition, an announcement was made over the compound speaker system.

46. After the incident of April 14, 2016, was de-escalated, Mrs. Norfolk and Lt. Smerk reported to the security area and debriefed Mr. Emerson and Mr. Parrish on the situation. Mr. Emerson never questioned Mrs. Norfolk about her initial reporting of the incident and never indicated she did anything wrong.

47. On April 28, 2016, Mrs. Norfolk received a drop note from an inmate. Mrs. Norfolk again attempted to contact Mr. Emerson who did not answer. She then contacted Mr. Martell and discussed the incident and the fact that she could not reach Mr. Emerson. Mrs. Norfolk also sent an email to Mr. Emerson and the SIS Department regarding the matter. Mrs. Norfolk was never questioned about this matter.

48. On May 10, 2016, an incident occurred in the D-Unit. Mrs. Norfolk was in the C-Unit and therefore, unaware of the incident. Mrs. Norfolk became aware of a "possible situation" when she was leaving for the day. Mr. Martell and Mr. Emerson were both aware of the situation

before Mrs. Norfolk. Mrs. Norfolk stayed at the facility and she and Mr. Martell went to the D-Unit to conduct interviews and make rounds in the pod. Neither Mr. Emerson nor anyone else questioned Mrs. Norfolk about this matter.

**RACIAL DISCRIMINATION AND HARASSMENT – STEPHEN W. NORFOLK**

**Count I**

49. Plaintiff incorporates by reference the averments of Paragraphs 1-48 of the Complaint as if the same were set forth in full.

50. Stephen W. Norfolk was thirty-eight (38) years old at the time he was terminated and is of the Caucasian descent.

51. Stephen W. Norfolk was qualified as a Lieutenant.

52. Stephen W. Norfolk was a veteran employee at the prison at the time the prison was taken over by Defendant.

53. When Defendant took over the management of the prison, an African American man, Major Robert Parrish, was placed in the position of Stephen W. Norfolk's supervisor.

54. Major Parrish targeted the white employees at the prison.

55. White employees were reprimanded for incidences that black employees were not reprimanded in the same or similar manner. In fact, the black employees under Major Parrish's supervision were not reprimanded at all.

56. Major Parrish made open, verbal racial slurs to Stephen W. Norfolk on a regular basis. Said racial slurs to Stephen W. Norfolk were also made in front of other employees.

57. Upon information and belief, Defendant terminated Stephen W. Norfolk on the basis of race.

58. The above described unlawful employment practices by Defendant, its agents, servants and employees violate Title VII.

59. The Defendant's actions were performed with malice and/or reckless indifference to the Plaintiffs' federally protected rights.

60. As a direct and proximate result of the above-mentioned employment practices, Stephen W. Norfolk was deprived of his job and has lost income in the form of back and front pay, fringe benefits, retirement contributions, medical insurance, lost future job opportunities, future substantial pecuniary losses, non-pecuniary losses and he has suffered embarrassment, humiliation, emotional distress, pain, suffering, inconvenience and mental anguish for which he seeks damages.

WHEREFORE, Stephen W. Norfolk demands judgment against Defendant and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive damages, liquidated damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

## DISCRIMINATION/RETALIATION – STEPHEN W. NORFOLK

### Count II

61. Plaintiff incorporates by reference the averments of Paragraphs 1-60 of the Complaint as if the same were set forth in full.

62. Stephen W. Norfolk reported the racial slurs from Major Parrish to Mr. Uhlig on several occasions.

63. As a result of making reports about the racial discrimination, Major Parrish retaliated against Stephen W. Norfolk.

64. Stephen W. Norfolk was terminated on April 25, 2016.

65. The above-described unlawful employment practices by Defendant, its agents, servants and employees violate Title VII.

66. The Defendant's actions were also performed with malice and/or reckless indifference to the Plaintiffs' federally protected rights.

67. As a direct and proximate result of the above-mentioned employment practices, Stephen W. Norfolk was deprived of his job and has lost income the form of back and front pay, fringe benefits, retirement contributions, medical insurance, lost future job opportunities, future substantial pecuniary losses, non-pecuniary losses and he has suffered embarrassment, humiliation, emotional distress, pain, suffering, inconvenience and mental anguish for which he seeks damages.

WHEREFORE, Stephen W. Norfolk demands judgment against Defendant and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive damages, liquidated damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

## DISCRIMINATION/RETALIATION – BRANDY M. NORFOLK

### Count III

68. Plaintiff incorporates by reference the averments of Paragraphs 1-67 of the Complaint as if the same were set forth in full.

69. As a result of Brandy M. Norfolk's husband filing a complaint with the PHRC and EEOC, Brandy Norfolk was targeted by Defendant in a retaliatory nature.

70. Brandy M. Norfolk had no disciplinary issues at work prior to her husband being terminated from employment.

71. The day after Brandy's husband was placed on administrative leave, Brandy M. Norfolk's supervisor began to target her performance.

72. Brandy M. Norfolk was unjustly disciplined for three alleged incidents that were never brought to her attention until such time that she received a letter advising her she was placed on administrative leave without pay pending a review of her performance and adjudication of potential disciplinary action.

73. Although none of the three afore-mentioned incidents were brought to Mrs. Norfolk's attention, Mrs. Norfolk was terminated as a result of the three afore-mentioned incidents as evidenced by Defendant's counsel's letter to the EEOC dated April 20, 2017, specifically identifying the incidents of April 14, 2016, April 28, 2016 and May 10, 2106.

74. Upon information and belief, Defendant terminated Brandy M. Norfolk on the basis of retaliation.

75. The above-described unlawful employment practices by Defendant, its agents, servants and employees violate Title VII.

76. The Defendant's actions were also performed with malice and/or reckless indifference to the Plaintiffs' federally protected rights.

77. As a direct and proximate result of the above-mentioned employment practices, Brandy M. Norfolk was deprived of her job and has lost income in the form of back and front pay, fringe benefits, retirement contributions, medical insurance, lost future job opportunities, future substantial pecuniary losses, non-pecuniary losses and she has suffered embarrassment, humiliation, emotional distress, pain, suffering, inconvenience and mental anguish for which she seeks damages.

WHEREFORE, Brandy M. Norfolk demands judgment against Defendant and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive

damages, liquidated damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

## PENNSYLVANIA HUMAN RELATIONS ACT VIOLATIONS

### Count IV

78. Plaintiffs incorporate herein by reference the averments of Paragraphs 1-77 as if the same were set forth in full.

79. Plaintiffs are in protected classes under the PHRA.

80. The Defendant is an "employer" as the term is defined in the PHRA. The Defendant's acts as alleged herein violate the Pennsylvania Human Relations Act.

81. Defendant's conduct as set forth above constitutes intentional and willful violations of the PHRA.

82. As a direct and proximate result of the employment practices, Plaintiffs have been deprived of their jobs, lost income in the form of back and front pay, fringe benefits, retirement contributions, medical insurance, loss future opportunities, future substantial pecuniary losses, non-pecuniary losses. Plaintiffs have suffered embarrassment, humiliation, emotional distress, pain, suffering, inconvenience and mental anguish for which the Plaintiffs seek damage under the PHRA.

WHEREFORE, Stephen W. Norfolk and Brandy M. Norfolk demand judgment against Defendant and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief,

compensatory damages, punitive damages, liquidated damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

Respectively submitted,<br>
BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.<br><br>
By: /s/  Amy H. Marshall<br>
Amy H. Marshall, Esquire<br>
Attorney for Plaintiffs<br>
Attorney ID: 74852<br>
330 Innovation Blvd., Suite 302<br>
State College, PA 16803<br>
Phone: (814) 867-8055<br>
Fax: (814) 867-8051<br>
amarshall@babstcalland.com

Date: February 21, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2018, the within Second Amended Complaint was filed electronically with the Western District by using the Western District of Pennsylvania ECF system and a true and correct copy of the electronic copy was served via the Court's CM/ECF system through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

> Joshua C. Vaughn, Esquire
> Littler Mendelson, P.C.
> 625 Liberty Avenue, 26th Floor
> Pittsburgh, PA  15222
> jvaughn@littler.com

Dated: February 21 , 2018                    s/ Amy H. Marshall
                                             Amy H. Marshall, Esquire
                                             Counsel for Plaintiffs