IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN W. NORFOLK and<br>BRANDY M. NORFOLK, | )<br>)<br>) | Case No. 3:17-cv-204 |
| Plaintiffs, | )<br>)<br>) | JUDGE KIM R. GIBSON |
| v. | )<br>) | |
| THE GEO GROUP, INC., d/b/a<br>MOSHANNON VALLEY<br>CORRECTIONAL CENTER, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Plaintiffs Stephen W. Norfolk and Brandy M. Norfolk's (collectively, "Plaintiffs") Motion for Leave to File a Third Amended Complaint (ECF No. 35). Defendant the Geo Group, Inc., d/b/a Moshannon Valley Correctional Center ("Defendant"), opposes the Motion. The Motion has been fully briefed (*see* ECF Nos. 35, 39-40) and is ripe for disposition.

For the reasons that follow, the Court will **DENY** Plaintiffs' Motion.

### II. Background[1]

#### A. Factual History

Defendant operates a private prison in Clearfield County, Pennsylvania. (ECF No. 18 ¶ 5.) Plaintiffs are both former employees of Defendant. (*Id.* ¶ 6.)

---

[1] The following factual allegations come from Plaintiffs' Second Amended Complaint (ECF No. 18) unless otherwise noted.

-1-

### 1. Stephen W. Norfolk

Mr. Norfolk was employed by Defendant as a Corrections Officer beginning in February 2006. (*Id.* ¶ 8.)

In 2014, Defendant hired Robert Parrish, a black man, to be Mr. Norfolk's supervisor. (*Id.* ¶¶ 9-10.) Mr. Norfolk, who is white, alleges that he endured "harassing and racially discriminatory comments" from Mr. Parrish beginning shortly after Mr. Parrish was hired. (*Id.* ¶ 11.) Plaintiffs allege that Mr. Parrish subjected Mr. Norfolk to "open, verbal racial slurs" on a regular basis (*id.* ¶ 56), and they describe several occasions between December 2014 and Mr. Norfolk's termination in February 2016 when Mr. Parrish made "racially charged discriminatory comments" to him. (*Id.* ¶¶ 12-21.)

Plaintiffs believe that Mr. Parrish gave preferential treatment to black employees, in part by reprimanding white employees while black employees were not reprimanded in the same or similar manner. (*Id.* ¶¶ 22, 55.) Plaintiffs note several times between Mr. Parrish's hiring and Mr. Norfolk's termination where black employees were allegedly given preferential treatment compared to white employees. (*Id.* ¶¶ 22-23.)

Plaintiffs claim that Mr. Norfolk reported Mr. Parrish's behavior to Donald Emerson, the Associate Warden, and to a human resources employee. (*Id.* ¶¶ 13, 17.) Plaintiffs allege that neither employee took any action to stop the harassment. (*Id.* ¶¶ 14, 20.) Further, Plaintiffs assert that Mr. Parrish retaliated against Mr. Norfolk after he reported Mr. Parrish's behavior. (*Id.* ¶¶ 14, 21, 63.)

Mr. Norfolk was placed on administrative leave without pay on February 5, 2016, after Mr. Parrish formally disciplined him for not attending a security meeting and not receiving

certain required training. (*Id.* ¶¶ 26-27.) Mr. Norfolk filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 10, 2016. (*Id.* ¶ 28.) Mr. Norfolk was then terminated on April 25, 2016, for "failure to follow policy." (*Id.* ¶ 33.) Mr. Norfolk alleges that he was terminated on the basis of his race, "as a result of his multiple reports to Human Resources about [Mr.] Parrish's racially charged and harassing comments," and as a result of his EEOC complaint. (*Id.* ¶¶ 31, 32, 57.)

### 2. Brandy M. Norfolk

Defendant hired Ms. Norfolk, Mr. Norfolk's wife, as a Case Manager in January 2006. (*Id.* ¶¶ 37, 39.) Ms. Norfolk was working as a Unit Manager when she was terminated. (*Id.* ¶ 37.) Plaintiffs allege that Ms. Norfolk had no significant disciplinary issues prior to Mr. Norfolk's termination. (*Id.* ¶ 41.)

After Defendant terminated Mr. Norfolk, Plaintiffs allege that Ms. Norfolk's supervisor began to target her performance at work. (*Id.* ¶ 39.) On June 10, 2016, less than two months after Mr. Norfolk was fired, Ms. Norfolk received a letter placing her on administrative leave without pay. (*Id.* ¶ 40.) This was the first time Defendant had advised Ms. Norfolk of any disciplinary issues. (*Id.* ¶ 42.) Six days later, Defendant terminated Ms. Norfolk for "her failure to report any issues in the Housing Unit she supervised." (*Id.* ¶¶ 43-44.) Plaintiffs allege that Defendant fired Ms. Norfolk because her husband filed several complaints against Defendant for its discriminatory conduct. (*Id.* ¶ 69.)

### B. Procedural History

Plaintiffs initiated this action by filing their Complaint on November 11, 2017. (ECF No. 1.) After Defendant filed a Motion to Dismiss (ECF No. 8), Plaintiffs filed their First Amended

Complaint on January 26, 2018. (ECF No. 11.) Plaintiffs then filed their Second Amended Complaint—the current operative complaint—on February 21, 2018. (ECF No. 18.) In the Second Amended Complaint, Plaintiffs bring race discrimination and retaliation claims against Defendant under Title VII of the Civil Rights Act of 1964. (*Id.* ¶¶ 49-77.) Plaintiffs also allege violations of the Pennsylvania Human Relations Act. (*Id.* ¶¶ 78-82.)

The Court issued an Initial Scheduling Order on September 14, 2018. (ECF No. 27.) The Order required the parties to move to amend their pleadings by October 3, 2018. (*Id.* at 1.)

Plaintiffs filed the present Motion for Leave to Amend Complaint and attached the proposed Third Amended Complaint on June 17, 2019. (ECF Nos. 35, 35-1.) Plaintiffs seek to amend their Second Amended Complaint to include claims under 42 U.S.C. § 1981. (ECF No. 35 ¶ 4.) Plaintiffs do not include any new allegations or claims in the proposed Third Amended Complaint aside from the § 1981 claims.

Defendant filed its Opposition to Plaintiffs' Motion for Leave to Amend Complaint on July 8, 2019. (ECF No. 39.) Defendant argues that Plaintiffs' motion is untimely, as the Motion was filed after the October 3, 2018, deadline to amend the pleadings had passed. (*Id.* at 1-2.) Defendant also argues that Plaintiffs have not demonstrated "good cause" for their delay. (*Id.* at 1, 3-4.) Defendant contends that Plaintiffs knew of the facts that supported their § 1981 claims long before they filed this Motion and that Plaintiffs have not provided any explanation as to why they did not include the § 1981 claims in their previous complaints. (*Id.* at 3-4.)

Plaintiffs filed a Reply on July 12, 2019. (ECF No. 40.) They argue that they have demonstrated good cause to amend as they "have acted with diligence in prosecuting their claims

and they seek to promote judicial economy by amending the existing complaint at a time that will not cause additional expense, delay or prejudice to the defendant." (*Id.* at 1.) Plaintiffs note that they could file a separate action for their § 1981 claims and move to consolidate that action with the present lawsuit under Rule 42(a) of the Federal Rules of Civil Procedure, but they argue that this would be less efficient than amending the Second Amended Complaint. (*Id.* at 2.) Plaintiffs also state that no additional discovery is necessary on the new claims and that Defendants are not prejudiced by the addition of the § 1981 claims because dispositive motions are not due until November 22, 2019. (*Id.* at 2-3.)

### III. Discussion

Federal Rule of Civil Procedure 15 governs amendments to pleadings. *See* Fed. R. Civ. P. 15. However, "when a party seeks leave to amend the pleadings after the deadline set by a court's scheduling order, that party must first satisfy Rule 16(b)(4)'s requirements for modifying a scheduling order." *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, No. 3:15-CV-22, 2017 WL 4286343, at *2 (W.D. Pa. Sept. 26, 2017) (Gibson, J.). Plaintiffs' Motion was filed approximately eight-and-a-half months after the deadline for amending pleadings had passed. (*See* ECF Nos. 27, 35.) Therefore, the Court must first analyze Plaintiffs' Motion under Rule 16(b)(4).

Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In the Rule 16(b)(4) context, 'good cause' looks to the diligence of the party seeking modification of the scheduling order." *Hadeed*, 2017 WL 4286343, at *2; *see also* Fed. R. Civ. P. 16, Notes of Advisory Committee on Rules—1983 Amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met *despite the diligence of the party seeking the extension.*" (emphasis added)). "The

moving party has the burden to demonstrate 'good cause' under Rule 16(b)(4) before a court will consider amending under Rule 15." *Hadeed*, 2017 WL 4286343, at *2.

The Court finds that Plaintiffs have not demonstrated good cause for their failure to comply with the Court's Initial Scheduling Order and the October 3, 2018, deadline it imposed for amending the pleadings. Plaintiffs have failed to explain why they did not assert their § 1981 claims by the deadline to amend the pleadings.

For example, Plaintiffs do not allege that they recently obtained new facts or information which would support the addition of their new claims. In fact, the proposed § 1981 claims rely on the facts already asserted in Plaintiffs' Second Amended Complaint. (*See* ECF No. 35 ¶ 6; ECF No. 40 at 2-3; *compare* ECF No. 35-1, *with* ECF No. 18.) Therefore, Plaintiffs could have asserted their § 1981 claims when they filed their Second Amended Complaint more than eighteen months ago. *See Graham v. Progressive Direct Ins. Co*, 271 F.R.D. 112, 119 (W.D. Pa. 2010) (Fischer, J.) (finding that the plaintiffs failed to demonstrate good cause when a motion to amend was filed eight months after the period for amending pleadings had expired and the new claims were based on facts known to the plaintiffs since the outset of the litigation).

Plaintiffs claim that "they have acted with diligence in prosecuting their claims." (ECF No. 40 at 1.) But vague and unsupported assertions of diligence are insufficient for the Court to find that good cause exists to amend a scheduling order.

Therefore, the Court finds that Plaintiffs have not shown good cause for amending the Initial Scheduling Order.[2] Because Plaintiffs have not met Rule 16(b)(4)'s requirements, the Court

---

[2] The Court recognizes Plaintiffs' argument that judicial economy would be best served by allowing Plaintiffs to amend the Second Amended Complaint. However, judicial economy alone does not meet Rule 16(b)(4)'s "good cause" standard.

need not determine whether Plaintiffs have satisfied the requirements of Rule 15.

IV. Conclusion

The Court finds that Plaintiffs have not demonstrated good cause under Rule 16(b)(4) to amend the Initial Scheduling Order. For this reason, the Court will **DENY** Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 35).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN W. NORFOLK and<br>BRANDY M. NORFOLK,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., d/b/a<br>MOSHANNON VALLEY<br>CORRECTIONAL CENTER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:17-cv-204<br><br>JUDGE KIM R. GIBSON |

**ORDER**

AND NOW, this _1st_ day of _August_, 2019, upon consideration of Plaintiffs' Motion for Leave to File a Third Amended Complaint (ECF No. 35), and for the reasons set forth in the foregoing Memorandum Opinion, it is **HEREBY ORDERED** that Plaintiffs' Motion is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE